Our final argument of the morning is in Appeal No. 222867, Ralph Lisby v. Jonathan Henderson and others. Ms. Bristow, good morning, good afternoon. Good afternoon, Your Honor. May it please the Court, I have reserved three minutes for rebuttal. We are here before the Court today on a 12b6 motion to dismiss, which was granted in favor of the defendants, in the context of an officer's actions while off-duty causing a fatality. Preliminarily, I'd like to address the 12b6 standard. We are in a position where we're permitted to do notice pleading, meaning we are only required to state a short and plain statement of the claim showing the pleader is entitled to relief. The purpose is to give fair notice of what the claim is and the grounds upon which it rests. We're viewing the facts in the light most favorable to the plaintiff, and plaintiff's complaint should not be dismissed for failure to state a claim unless there's no doubt the plaintiff cannot prove a set of facts that would entitle her to relief. Ms. Bristow, in the interest of time, what do you think the, if you just go one step beyond 12b6, what do you think the substantive standard is against which we're measuring the complaint? The substantive standard is set out originally in Lewis and has been interpreted many times, and the standard we're dealing with is deliberate indifference. Right. So what, the reason I'm asking the question is, is there any tension in your mind at all between what we said in Hill v. Shoeb and then what we later said in Flores v. City of South Bend with respect to the legal standard? That is certainly a thing that I grappled with in preparing for this argument today, and I think some of the cases- What's your best articulation of what's that standard? So it depends on the, whether the actions are emergent or not. In Hill, technically we're dealing with just language that did not meet the level required. So meaning they asserted negligence and recklessness with nothing more. There's a really nice footnote in the Hill case which says the keyword is accident. The plaintiff's alleged an accident.  In the briefing, we call Hill and Flores bookends, and I think that's a really nice way to think about it because Hill is clearly not meeting the standard. Flores is clearly meeting the standard. And so most of the cases that we will look at today fall somewhere in the middle, and that's certainly where this case falls, somewhere in the middle. So we're dealing with non-emergent actions. He's not on duty. He's not in a chase. There's no robbery. He's not doing anything emergent. He has time to deliberate. So deliberate indifference is used when there's time to deliberate. So the question is really, under deliberate indifference, what actions shock the conscience? This is something that's incredibly fact-specific, and actually I think the Browder case- That's Lewis. I mean, that's what you're, that's where you're getting at. Absolutely. Yeah. But in Flores, we seem to say that a trier of fact would be entitled to find the knowledge requisite for the deliberate indifference in circumstances where there's an unjustifiable risk to human life and a conscious disregard of that risk. That's the way we framed it there. That correct? Absolutely. Okay. And so how, if that's, so that's your view of the standard? Absolutely, Your Honor. Okay. And then how did, how did the facts fit that here? So I think that the Browder case is most helpful factually, because like I said, the Flores case is an absolutely meets that standard kind of case, and we're dealing with a case that's probably a little bit less than that in some capacity. So the Browder case actually interprets several of the cases, and it involves an off-duty officer not giving chase. Okay. And in that case, the officer was driving well over the speed limit for a stretch of miles. He runs a red light and causes a collision. That court, it's the Tenth Circuit, but I think it's helpful factually in this case. That court found that he, the officer operated with content, conscious contempt of the lives of others, and thus a form of recklessness. The court noted that based on the facts pleaded, you know, a jury could find no more than negligence. On the part of the officer. But we're on a motion to dismiss standard, meaning on the facts pleaded, a reasonable jury could infer something more. A conscious contempt of the lives of others, and thus a form of reckless indifference to a fundamental right. So I think that's a helpful analysis, particularly given the fact that he was not on duty at the time. He has deliberate indifference. He has time to deliberate, and he's doing it sort of for his own pleasure. So that was something that the, I saw your brow wrinkle. I don't know. I mean, I think what you, you're telling me I'm wrong on this. I think what you have here is you have, you definitely have negligence. You may have extreme negligence. And I thought that what was going to be alleged, but I just don't see it, is that he was texting. And that, or texting or something's causing him to look in that rear view mirror that way. But I don't see a fact like that. That's something that we have not had a chance to discover yet. So at the time this motion was granted, there was discovery pending. There was a motion to compel pending. So the issue sort of before this court is, are the allegations sufficient to meet the standard to allow us to conduct discovery? To allow us to hit the summary judgment stage? It's possible that we will conduct discovery and find out, actually these actions don't meet the standard. But we should be permitted to discover the facts. In this case, the defendant is in possession of all the facts that exist, essentially. We've been able to discover a small number of facts which are stated in our amended complaint. But we should be permitted to discover more to determine, can we meet that standard? Our position is, on a motion to dismiss, we have met the standard. We have pled... Mr. Counsel, going back to Browder, which you said is instructive in this case. In Browder, as I understand it, and as I read it, he drove 65 miles per hour on city streets for a stretch of over eight and a half miles, right? And he approached an intersection at 1.30 a.m., the light was red, but he ignored it and pressed the gas pedal anyway, crashing into a car. I mean, it seems a bit different from the case here where the time span, at least according to the allegations, that the defendant was speeding wasn't 8.8 miles, it was just kind of a limited time span, whereas he was trying to get, I think he was trying to get in position to get on an off-ramp, right? And so, doesn't, so I'm not really sure that Browder really helps you in this case. I'll note that I have, I've entered into my rebuttal time, but I'd be happy to answer that question. Yeah, please do. Go ahead. Okay, so we are dealing with an off-duty police officer driving well over the speed limit. He's on the shoulder of the road. He's not looking at the road. And the lights in the area are out. Well, he veers into the shoulder, right? He's not driving down the shoulder. We don't have dash cam to say one way or another. We know very little at this point. We know that that's what he's admitted to at this point. The lights are out in the area, so it's darker than usual. So I'm not saying Browder's identical factually, but I think that it's very helpful and instructive because that police officer is off-duty at the time. He's making an intentional misuse of his vehicle. And that's exactly what's happening here. This police officer is not conducting any governmental action in any capacity. He's not furthering his job in any capacity. He's on his way to roll call. He's maybe late for work. So my position is simply that it's instructive. It's not identical. Okay, you want to save the rest of your time? Yes, sir. Thank you. Okay, very well. Mr. Montgomery, we'll hear from you. Thank you, and good afternoon to the Honorable Judges. May it please the Court. Travis W. Montgomery on behalf of Officer Jonathan Henderson and the City of Indianapolis, the appellees and defendants below in this matter. Bearing in mind the Supreme Court's 1976 admonition that the 14th Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the states, the District Court in this case carefully considered the legal sufficiency of the estate's substantive due process claim in light of the specific facts that the estate alleged and upon which the claim was based. And the District Court correctly determined that those facts, even accepted as true, were nevertheless insufficient to establish the criminal recklessness required to sustain a 14th Amendment claim under circumstances such as this. Because the Court properly dismissed the estate's Section 1983 claim in response to a motion for judgment on the pleadings, and because the estate has provided no basis upon which to disturb that ruling, the appellees respectfully request that this Court affirm the order granting the partial judgment on the pleadings and remanding the matter to state court. It's clear from the argument presented today that the parties agree that the 14th— Oh, say that last part again. Did you say remand to the state court? Correct. Because there is also the negligence claim that remains. So part of the order that the District Court issued remanded the remaining negligence claim to state court, having disposed of all the federal claims and determining that the supplemental jurisdiction in its discretion should not be exercised given the nature of this. I got it. Okay. Okay. The parties agree that the 14th Amendment under these circumstances, when an officer-involved motor vehicle accident results in death, requires a demonstration of criminal recklessness. But there have been no allegations here to support criminal recklessness. Criminal recklessness is a legal standard that's been articulated by this Court and the nature of the facts that have to be pled in order to establish and meet that legal threshold. Here, they simply do not exist. Here, we have an allegation simply that Officer Henderson was traveling above the posted speed limit and that he made an unlawful or improper lane change. If speeding and an improper lane change are sufficient to invoke the due process clause of the Constitution, then every time we have an accident in which there's speeding or a lane change that was improper and it involves a state actor, there's going to be an opportunity for a plaintiff to simply come in and say, we believe that that shocks the conscience. We believe that that supports a violation of the due process clause. This mere claim of negligence has now become a constitutional claim. That isn't the standard. As this Court said in Hill, which was referenced during the previous argument, it is not enough to show that a state actor should have known of the danger his actions created. Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm, which he consciously refused to prevent. There's a piece of evidence that isn't highlighted in the briefing in this case, but that is particularly important as to that particular issue, and that is according to the facts as alleged by the plaintiffs in this case. Officer Henderson was traveling at approximately 78 miles per hour, quote, immediately before impact with Ms. Lisby. At impact, he was traveling 55 miles per hour. So when he realized that he was about to hit somebody, he slowed his vehicle so substantially in such a short period of time that he was now going more than 20 miles per hour, less than he had been before. That's the opposite of conscious disregard or a conscious refusal to prevent an accident. That is evidence pleaded by the plaintiff of an actual intent of the officer to avoid the impending injury once he recognized it. And, Counsel, so this took place on the shoulder of the road, right? Kind of a major thoroughfare? Correct. So we're dealing with a major thoroughfare with five lanes of travel northbound, which is the direction in which the officer was traveling as it approaches the on-ramp to Interstate 465, which is the major interstate that encircles the city of Indianapolis. And is there any allegations in either complaint that the shoulder at that area was regularly used by pedestrians? No, there is no suggestion to that effect, particularly at the time in which this occurred, which was 924 p.m. on a night. So there's no evidence to suggest that this is something that regularly occurs, that there would be any special notice or knowledge in the defendant's possession, in Officer Henderson's possession, that there was a particular harm of which he should have been aware, nor is there any evidence that he saw either of the two pedestrians who were walking at that time, because Ms. Lisby was accompanied also by Mr. Lewis, her boyfriend at the time, who was also the father of the child with whom she was pregnant. And so he's also not, as part of his complaint, offered any evidence as a witness to suggest that there was texting by the officer, that the officer wasn't paying attention, or that there were special circumstances there that should have alerted the officer to the fact that there would be impending harm as he tried to exit a major thoroughfare north and southbound onto an on-ramp of an interstate, where he would be expected to travel 55 miles per hour or more. To note a couple of things that were discussed, again, we talked about Hill, we talked about the bookend cases, or those were discussed earlier, Flores and Hill. And in the court report, there is no contradiction between those two cases. They are indeed bookends of what is clearly not a constitutional violation under these circumstances or in this context. Yeah, I mean, I think you're definitely right. They don't contradict one another. Do you think the legal standard that's articulated in both cases is exactly the same? I think it is exactly the same. I think the standard is the same. The way that it's approached or the way that it's identified might be a little bit different because the language is different, because we have a collection of case law in which courts applying that same legal standard have articulated it in slightly different ways. So the articulation is different. The standard, however, is not. The standard is what it is and what it has always been. And it has been that way because we recognize that the federal courts are courts of limited jurisdiction. And they have a material interest in guarding jealously that status. That's particularly true when somebody is trying to invoke the supreme law of the land as a basis for a court claim, which is the case here. So that standard requiring the criminal negligence or the criminal recklessness, something on the border of actual intent to harm, of conscious disregard, those are all the same standard. They just are articulated slightly differently by slightly different courts depending on the language that they choose to use or the case that they've cited in support of that position, which is the same here. I don't want to belabor the point of the fact that the facts of this case fall well within Hill where there was no Fourth Amendment violation, where there was driving well over the speed limit and no headlights. That was insufficient. Flores was quite different, 78 miles per hour in a 30 mile per hour zone in a residential area, speeds as high as 98 miles per hour during the chase, and another instance in which a red light at an intersection was disregarded and caused a crash into another vehicle proceeding with a green light. That's the same in Broward that was discussed. It's also in Sowers, which is discussed in that case. This case clearly is more akin to Hill. There is no Fourteenth Amendment violation based on these facts. Briefly with respect to the discovery issue, discovery in this case, based on the record, was served in October of 2021. Responses were provided in December 3rd of 2021. The motion to compel was filed on March 11th of 2022, and that's docket 61 in the record. It was originally denied, reconsidered, was granted, and then an order was issued in September of 2022, which granted in part and denied in part and required additional responses due by September 14th. So there was an opportunity to provide discovery. Some discovery was provided, but the larger issue, Your Honors, is that there has been no indication or argument from the plaintiffs, or the plaintiff in this instance, as to what information specifically would have changed the outcome here had discovery been allowed to move forward. The discovery is designed to help prove the allegations that you make. The allegations have already been made here, and there's nothing that's going to come in discovery that could come in discovery that would change the fact that we had an officer who was on duty, by the way, because he was going to roll call, as they have alleged at least. Nothing's going to change the fact that he did nothing more than travel in excess of the speed limit and make an improper lane change. That's what it's going to be regardless, and there's no need for discovery to further that point. My time is concluded. Thank you. Thanks to you, Mr. Montgomery. Solicitor Gap. Thank you, Your Honor. I have a few points that I would just like to touch on. First, in our amended complaint, we do allege that the plaintiff, the deceased, was on the shoulder lawfully. Next, this is not in the record, but the officer did admit that he did not see her prior to colliding with her. Finally, the defense's reliance on Hill is misplaced because, again, that case involves allegations of an accident with no deliberate intent, with only recklessness. In this case, we've alleged that his actions were arbitrary. They shock the conscience. They're capricious, taken without good reason and with deliberate indifference, willful, wanton, and malicious, done with reckless disregard of the consequences, and they demonstrate conscious and deliberate indifference. So we've done much more than the allegations in Hill. So I do not believe that it's particularly useful other than telling us what the bookend is on the other side. If you have no further questions, I will rest on our briefs and ask that you vacate the district court's order. Okay, very well. Mr. Whistler, thank you. Mr. Montgomery, thanks to you. We'll take the appeal under advisement, and the court will be in recess.